**SO ORDERED.**

**SIGNED November 6, 2020.**



_____

**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

In re:                                                          Case No. 17-51634

Destin Resources LLC                           Chapter 7
                    *Debtor*
                                                                Judge John W. Kolwe

*consolidated for decision with*

In re:                                                          Case No. 17-51570

Reserves Management, L.C.                    Chapter 7
                    *Debtor*
                                                                Judge John W. Kolwe

**RULING ON TRUSTEE'S MOTION TO EMPLOY SPECIAL COUNSEL**

Before the Court in these two cases is the Chapter 7 Trustee's Motion for Entry of Order Authorizing Trustee to Employ Special Counsel and Provide Mechanism for Compensation of Same (hereinafter "Motion to Employ Special Counsel"). The Trustee seeks to hire special counsel to pursue litigation against parties who may be responsible for the plugging and abandonment of wells, and the decommissioning of a platform and production facilities, located on West Cameron Block 168, Offshore

Louisiana, which is property of both estates.[1] Proposed special counsel also represent two creditors of the Debtors in these cases, specifically, the companies who issued surety bonds to secure the Debtors' plugging and abandonment obligations for wells and facilities located on West Cameron Block 168. Because proposed counsel represent creditors in this case, the Trustee seeks their employment under § 327(c) of the Code, which authorizes a trustee to employ attorneys who represent creditors in a case unless there is an objection by another creditor or the United States Trustee, in which case such employment may only be allowed if, among other things, there is no actual conflict of interest. Two creditors have objected to the Trustee's motion, one of which may be a target of the litigation contemplated by the Trustee, claiming the motion cannot be approved because of an actual conflict of interest. The Court has considered the parties' pleadings, the arguments of counsel, the exhibits submitted during the hearing, and other relevant sources, and for the following reasons, it will overrule the objections and approve the employment.[2]

## BACKGROUND

Destin Resources, LLC and Reserves Management, L.C. filed their respective Chapter 7 cases on December 4, 2017; a related entity, Linder Oil Company, A Partnership, also filed under Chapter 7 on October 10, 2017 (Case No. 17-51323). At the time these cases were filed, Destin and Reserves owned interests in the mineral lease covering West Cameron Block 168, which is located on the Outer Continental Shelf, offshore Louisiana ("WC 168"), and Linder served as the operator of that property.

The WC 168 mineral lease has now terminated, leaving several wells to be plugged and abandoned, as well as decommissioning obligations for a platform,

---

[1] While not jointly administered, these two bankruptcy cases are factually related, and the Trustee's Motion to Employ Special Counsel in each case (ECF #45 in the Destin case, ECF #94 in the Reserves case) is essentially the same, involving the same set of operative facts. Accordingly, this Ruling applies equally to both cases and will be entered in both.

[2] The Court held an evidentiary hearing on the Motion to Employ Special Counsel and subsequently announced a ruling on the record. This Ruling supplements the oral ruling of the Court.

2

pipelines, and related production facilities located on the lease (collectively, the "decommissioning obligations"). The Destin and Reserves bankruptcy estates are burdened with these obligations. Indeed, the United States Bureau of Ocean Energy Management ("BOEM") made demand on Elizabeth G. Andrus, Chapter 7 Trustee for both Destin and Reserves, to complete all decommissioning obligations on WC 168. She contends, however, that neither Destin's nor Reserves' bankruptcy estates has any assets available to cover the costs of these obligations. But she claims to have identified at least two prior owners of the lease, Sojitz Energy Venture, Inc. and Chevron USA, Inc., which may have joint and several liability for some or all of these obligations under certain BOEM regulations and other applicable laws. Thus, her plan is to pursue these other "responsible parties," on behalf of the Destin and Reserves bankruptcy estates, for the payment of their share of the decommissioning obligations.

In furtherance of her plan, the Trustee has filed this motion seeking to employ special counsel to pursue the responsible parties. The proposed attorneys are Lee E. Woodard with the Harris Beach Firm, and Armistead M. Long with Gordon Arata Montgomery and Barnett (referred to collectively as "proposed counsel"). Complicating the Trustee's motion to hire these two firms is the fact that they both jointly represent two other creditors of the Debtors, namely Lexon Insurance Company and Bond Safeguard Insurance Company (collectively, "Lexon"). Mr. Woodward and Mr. Long, as counsel for Lexon, have been active participants in these cases, as well as the Linder case, and have made numerous appearances before the court on various matters pertaining to WC 168 and the decommissioning obligations on that property.

At this point, a brief description of Lexon's relationship with the Debtors, and the nature of its claim, is helpful. In order to obtain licenses and permits needed to conduct operations in the Gulf of Mexico, Linder, as the designated operator of WC 168, and Destin and Reserves, as owners of interests in the mineral lease covering WC 168, were required to provide acceptable financial assurances to the United States Department of the Interior and BOEM to cover anticipated decommissioning

3

obligations. Linder, as operator, obtained certain bonds from Lexon, which issued at least eight bonds collectively totaling $11,163,300. Lexon's bond agreement with Linder involves three parties: first, the principal, who is the primary obligor, which here is Linder; second the surety, who is the secondary obligor, which here is Lexon; and third, the obligee, the party to whom both the principle obligor and surety owe the duty, which here are the regulatory authorities—the Department of Interior and BOEM.[3] Additionally, Lexon is a party to a General Agreement of Indemnity that was executed by Linder, Destin and Reserves as "Indemnitors." Under this agreement, the Indemnitors agreed to jointly, severally and/or collectively indemnify Lexon from every claim that Lexon may pay under the bond agreements.[4] Lexon filed a proof of claim in both the Destin and Reserves bankruptcy cases in the full amount of the bonds that were issued, $11,163,300. Attached to the claim are the bonding agreement and the General Agreement of Indemnity.

Given proposed counsel's representation of Lexon in these cases, the Trustee is seeking to employ them under § 327(c) of the Code. She indicates that her proposed agreement with counsel requires Lexon to pay the fees and costs of proposed counsel, and that neither the Destin nor the Reserves estates shall have what she refers to as *in personam* liability for these fees and costs. However, upon recovery of any monies from any "responsible parties," whether through litigation or other means, the Trustee indicates that Lexon may file an application with the Court seeking reimbursement of all fees and costs advanced to proposed special counsel.[5]

Two creditors of the Debtors, Sojitz and The Cadle Company II, Inc., oppose the Trustee's Motion. Sojitz contends that an actual conflict will arise between proposed counsel and the estate. Sojitz, which is a potential target of the Trustee, claims that any resolution of this matter will require that the estate pursue a claim

---

[3] *See* ECF # 56-5, Sojitz Ex. 16, ¶ 27; *see also*, Lexon's Proof of Claim in the Destin Case, Claim No. 27-1, and Lexon's Proof of Claim in the Reserves case, Claim No. 24-1.

[4] *Id.*

[5] The Trustee stated during the hearing on this matter that she did not have sufficient funds to pay the attorneys based on an hourly fee arrangement, and she was unable to find any firms that would be willing to undertake the representation on a contingency fee basis.

4

not only against the alleged "responsible parties," but also against Lexon for payment under the Debtors' surety agreement with Lexon. Thus, Sojitz argues an actual conflict exists. Cadle, as the largest secured creditor of each Debtor, joins Sojitz on its objection. Additionally, Cadle contends that Lexon is attempting to impermissibly charge the estate with the decommissioning obligations which it contractually agreed to undertake. Although the basis for Cadle's assertion is not obvious, the Court will assume Cadle is claiming that the fee arrangement is not authorized by § 328 of the Code.

The straightforward issues before the court, then, are whether proposed counsel satisfy the requirements of 11 U.S.C. § 327, and whether their fee arrangement is in accord with 11 U.S.C. § 328.

## LEGAL STANDARDS

A trustee's employment of professionals to assist the estate, including general counsel and special counsel, is governed by § 327 of the Bankruptcy Code:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
>
> (b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.
>
> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

5

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

11 U.S.C. § 327.

Since proposed counsel have represented creditors in these cases, subsection (c) of § 327 is triggered here. It provides that a person is "not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). Thus, if a creditor or the United States trustee objects to the trustee's employment of counsel who also represents a creditor, one of the factors the court must determine is whether the employment creates an actual conflict. Obviously, "something more than the mere fact of dual representation must be demonstrated if there is to be disapproval of the engagement. 3 *Collier on Bankruptcy*, ¶ 327.04[7][a] (Richard Levin and Henry J. Sommer eds. 16th ed.). "Thus, although section 327(c) permits retention by the estate of a professional person whose client is or was a creditor, it does not authorize representation of that creditor vis-à-vis any asserted claims against the estate." *Id.*

While § 327(c) prohibits disqualification of professionals based solely on the professional's prior representation of or employment by a creditor, "subsection (c) 'does not preempt the more basic requirements of subsection (a).'" *In re Contractor Technology, Ltd.,* 2006 WL 1492250, at *5 (S.D. Tex. May 30, 2006) (quoting *In re AroChem Corp.,* 176 F.3d 610, 621 (2d Cir. 1999) (citing *In re Interwest Business*

6

*Equip.,* 23 F.3d 311, 316 (10th Cir. 1994))). Thus, in applying § 327(c), it "remains important to determine whether the person is disqualified on any other ground" under § 327. *Id.*; *see also* 3 *Collier on Bankruptcy*, ¶ 327.04[7][b] ("If a professional person is considered for employment, it remains important to determine whether the person is disqualified on any other grounds, *e.g.,* an interest adverse to the estate.").

This brings the focus back to subsection (a) of § 327, which governs a trustee's employment of all professional persons. This provision sets forth a two-pronged test governing the employment: the attorney must (i) "not hold or represent an interest adverse to the estate," and (ii) be "disinterested." 11 U.S.C. § 327(a); *In re West Delta Oil Co., Inc.,* 432 F.3d 347, 355 (5th Cir. 2005); *AroChem,* 176 F.3d at 620-21; *Contractor Technology*, 2006 WL 1492250, at *5. In the Fifth Circuit, "these standards are 'strict,'" with the court emphasizing "that attorneys engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.'" *West Delta Oil,* 432 F.3d at 355 (quoting *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1256 & n. 6 (5th Cir. 1986) (internal quotation marks and citations omitted)). Thus, in considering whether to approve a trustee's proposed counsel, a court should be "sensitive to preventing conflicts of interest" by engaging in a "painstaking analysis of the facts and precise application of precedent." *Id.* (quoting *Consolidated Bankshares,* 785 F.2d at 1256). "If an actual conflict of interest is present, 'no more need be shown ... to support a denial of compensation.'" *Id.* (quoting *Consolidated Bankshares,* 785 F.2d at 1256 (quoting *Woods v. City Nat'l Bank & Trust Co. of Chicago,* 312 U.S. 262, 268, 61 S. Ct. 493, 85 L. Ed. 820 (1941))).

The first prong of § 327(a), whether the professional sought to be hired by the Trustee has or represents an interest adverse to the estate, has been interpreted by analogizing to § 327(e), which uses the same terminology with respect to the retention of special counsel hired for a limited purpose. *Contractor Technology*, 2006 WL 1492250, at *5; s*ee also West Delta Oil,* 432 F.3d at 356; *AroChem,* 176 F.3d at 622.

7

"Section 327(e) precludes appointment of special counsel for a trustee if the 'adverse interest' is 'with respect to the matter on which such attorney is to be employed.'" *Contractor Technology*, 2006 WL 1492250, at *5 (quoting 11 U.S.C. § 327(e)). Courts, including the Fifth Circuit, have incorporated into § 327(a) this latter concept that a special counsel's adverse interest is relevant only if that interest relates to the matter on which the special counsel is employed. *See West Delta Oil,* 432 F.3d at 356; *In re AroChem,* 176 F.3d at 622.

The question becomes, then: What does it mean for a professional person to "represent or hold any interest adverse to the debtor or to the estate"? One court has defined it as:

> (1)  to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2)  to possess a predisposition under circumstances that render such a bias against the estate.

*In re Roberts,* 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in relevant part and rev'd and remanded in part on other grounds,* 75 B.R. 402 (D. Utah 1987) (formatted for clarity). The Fifth Circuit and other courts have favorably cited this definition. *West Delta Oil,* 432 F.3d at 356; *AroChem,* 176 F.3d at 623; *In re Crivello,* 134 F.3d 831, 835 (7th Cir. 1998); *In re Caldor, Inc. NY,* 193 B.R. 165, 172 (Bankr. S.D.N.Y. 1996). *Contractor Technology,* 2006 WL 1462550 at *6.

"The term "adverse interest" is not defined in the Code and whether one exists is determined on a case by case basis." *Caldor,* 193 B.R. at 171; *accord Contractor Technology*, 2006 WL 1462550 at *6 ("While [the *Roberts* formulation may be] helpful, this definition must be employed with an eye to the specific facts of each case, and with attention to circumstances which may impair a professional's ability to offer impartial, disinterested advice to his or her client." (quoting *West Delta Oil*, 432 F.3d at 355, 356) (alteration in *Contractor Technology*)). "The adverse interest must be material before the conflict requires disqualification." *Contractor Technology*, 2006

8

WL 1492250, at *6 (citing *In re First Jersey Sec., Inc.,* 180 F.3d 504, 509 (3d Cir. 1999); *Pierce v. Aetna Life Ins. Co. (In re Pierce),* 809 F.2d 1356, 1362 (8th Cir. 1987)).

"The concept of 'adverse interest' has also been articulated in terms of motivation: whether the attorney possesses 'a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors.'" *Id.* (quoting *In re Martin,* 817 F.2d 175, 180 (1st Cir. 1987)), and citing *Pierce,* 809 F.2d at 1362; *Consolidated Bankshares,* 785 F.2d at 1256 n. 6 (adverse interest is one that "may engender conflicting loyalties")). The *AroChem* court concluded that "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is retained*, there is no conflict and the representation can stand." *AroChem,* 176 F.3d at 622 (citations omitted) (emphasis in original); *see also Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir. 1993); *In re National Trade Corp.,* 28 B.R. 872, 875 (Bankr. N.D. Ill. 1983).

In summary, the first prong of § 327(a)—whether the professional sought to be hired by the Trustee has or represents an interest adverse to the estate—

> is designed simply to "serve the important policy of ensuring that all professionals appointed [to represent the trustee] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994); *accord AroChem,* 176 F.3d at 621. "When evaluating proposed retention, a bankruptcy court should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision." *AroChem,* 176 F.3d at 621 (citations omitted). "Relevant considerations are 'the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.'" *In re Vouzianas,* 259 F.3d 103, 107 (2d Cir. 2001) (quoting *AroChem,* 176 F.3d at 621).

*Contractor Technology*, 2006 WL 1492250 at *6.

The second prong of § 327(a) requires that counsel for the trustee be "disinterested." With respect to this requirement, the Court looks first to the

9

Bankruptcy Code's definition in § 101(14)(C). The Bankruptcy Code defines a "disinterested" person as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C); *West Delta Oil,* 432 F.3d at 356. "Section 101(14)(E) [the former location of § 101(14)(C)] implicates only the personal interests of the professional whose disinterestedness is questioned." *In re Contractor Technology,* 2006 WL 1492550, at *7, *citing AroChem,* 176 F.3d at 629. Accordingly, to violate the requirements of § 101(14)(C), the professional personally must "have" the prohibited interest, and the representation of an adverse interest cannot be imputed to the professional. *Id.*

Assuming proposed counsel meet the requirements of § 327, the terms of the Trustee's arrangement with proposed counsel must meet the requirement of the relevant portions of § 328 of the Code, which provide:

> (a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.
>
> *   *   *   *   *
>
> (c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or

10

represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(a) and (c). Section 328 provides the Trustee and the Court maximum flexibility in structuring the fee arrangement. As is the case under § 327, the overarching concern in § 328 is that the counsel not hold an adverse interest with respect to the matter for which he or she is employed, and that he or she remain disinterested throughout the representation.

## ANALYSIS

### A.   Proposed counsel meet the requirements of § 327(a) and (c).

#### 1.   Proposed counsel do not hold an interest adverse to the Debtor.

The Court will begin its analysis by considering whether proposed counsel currently represent or in the past have represented interests adverse to the Debtors and their estates. Sojitz and Cadle's objection rests primarily on this prong. They contend that proposed counsel's active representation of Lexon in numerous matters in these cases and the Linder bankruptcy case creates an actual conflict with their representation of the Trustee, because, according to them, "inherent in [proposed counsel's] representation of the debtor is the obligation to pursue a claim against their own client, Lexon." (Case No. 17-51570, ECF # 95, ¶ 20). Sojitz continues:

> 21.    In addition, Lexon has agreed to advance all fees and costs incurred by special counsel. In that respect, it is highly unlikely that Lexon is going to pay [proposed counsel] to pursue a claim against it for the bonds. This would not only be against the interest of the debtor's estate, but at best it demonstrates that proposed counsel are not disinterested; and at worst it demonstrates a clear conflict of interest.

> 22.    Sojitz can only assume that Lexon does not want to pay on the bonds, otherwise, it would have already paid on the bonds and the need to employ special counsel would be moot.

11

> 23.   [Proposed counsel] cannot zealously prosecute a claim for P & A against their client Lexon as special counsel for the debtor's estate all the while defending the same claim as counsel for Lexon. Here the proposed employment would create a divided loyalty.

*Id.* ¶¶ 21-23.

Sojitz asserts that proposed counsel hold an interest adverse to the estate because there representation of the Trustee necessarily requires that they also bring an action against Lexon to collect on the bonds. This argument resonates at a superficial level. After all, Linder, on its own behalf and on behalf of Debtors, contracted with Lexon to provide bonds to cover the costs of the decommissioning obligations in the event Linder and the Debtors were unable to perform. Thus, at a cursory level, it would seem that the Debtors may have a claim against Lexon for it to fulfill its obligations under the bonding arrangement by performing and paying for the decommissioning obligations. However, upon closer examination of the bonding arrangement and the stated purpose of counsel's representation of the Trustee, as described in the motion, it becomes evident that Sojitz's argument does not hold water.

As noted above, the bonding arrangement between the Debtors and Linder on one hand, and Lexon on the other, presents a surety arrangement, not insurance for the Debtors' decommissioning obligations on WC 168. And while the parties' rights and obligations under the bonding arrangement are complicated and beyond the scope of this opinion, a review of the arrangement shows that the primary, if not only, party that can pursue Lexon for performance under the bonds is the United States of America, the party to which the decommissioning obligations are owed, not the Debtors or any other party that may be responsible for the decommissioning obligations. Thus, contrary to Sojitz's assertion, it is not inherent that the Debtor has a cause of action against Lexon for performance of the decommissioning obligations.

Even if the Debtors may have a cause of action against Lexon, that is not the purpose for which proposed counsel are being hired. The primary purpose for the Trustee's employment of proposed counsel is to determine which parties, if any, in

12

the chain of title to the mineral lease covering WC 168, other than the Debtors, may be responsible for completing and paying for the decommissioning obligations. In this regard, the Debtors' and Lexon's interests are aligned. Both the Debtors and Lexon, as their surety, have an interest in determining whether there are other parties in the chain of title to the lease that may be responsible for all or part of the decommissioning obligations. To the extent other parties may be responsible for those obligations, then the Debtors' bankruptcy estates and Lexon will reap a benefit by decreasing the amounts for which they may be responsible to pay towards the decommissioning obligations. Generally, when the parties' interests are aligned, special counsel do not have an adverse interest to the debtor or its estate. *See AroChem*, 176 F.3d at 623 (disqualification not required "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is retained*" (emphasis in original)); *see also Contractor Technology*, 2006 WL 1492550, at *6 n. 9.

Turning to the *Roberts* factors, given the alignment of the Debtors' and Lexon's interests, it is unlikely that proposed counsel will assert any economic interests that would tend to lessen the value of the Debtors' bankruptcy estates. Moreover, neither Sojitz nor Cadle have shown that proposed counsel's representation of the Trustee will create an actual or potential dispute in which the estate is a rival claimant. For the same reason, they have failed to show that an actual conflict exists. Finally, proposed counsel's representation of Lexon in these cases will not cause them to have a bias against the estate when it comes to determining parties, other than the Debtors, that may be responsible for the decommissioning obligations. Thus, the Court finds that proposed counsel do not hold an interest adverse to the estate.

### 2. Proposed counsel are "disinterested."

Both Mr. Woodward and Mr. Long submitted affidavits in support of the Trustee's motion. They both declare that neither they, nor any member of their respective firms, have any connection with the Debtors, the Debtors' attorneys or accountants, or anyone in the United States Trustee's Office. On this basis, they

assert that they are "disinterested" persons within the meaning of the term under §§ 101 and 327 of the Code. The Court agrees. There is no evidence before the Court showing that the lawyers and their firms have any connection with the Debtors and their estates.

Both Sojitz and Cadle argue that proposed counsel's representation of Lexon makes them disinterested. However, proposed counsel's representation of Lexon in this proceeding cannot be imputed to them to make them disinterested persons. *See Contractor Technology*, 2006 WL 1492550, at *7. Accordingly, the Court finds that the second prong of 327(a) is satisfied here.

### B.  The proposed fee arrangement satisfies section 328 of the Code.

A trustee is given great latitude in the employment of counsel. *See In re Interamericas, Ltd.*, 321 B.R. 830, 833 (Bankr. S.D. Tex. 2005); *Contractor Technology*, 2006 WL 1492550, at *10. Under Section 328 a trustee is entitled to employ an attorney on any "reasonable terms" including a contingency fee basis with the Court's approval.

Here, because the bankruptcy estates have no assets, the Trustee stated during the hearing on this matter that she attempted to employ counsel on a contingency fee basis. She had no takers for that arrangement. She contends that the only arrangement she could make was the one being proposed here with Lexon's counsel.

Cadle objects to the Trustee's proposed fee arrangement with proposed counsel to the extent that it contemplates Lexon seeking reimbursement of the fees it pays to proposed counsel. Cadle contends that Lexon agreed to bear these costs when it issued the bonds, and thus it should not be able to shift these expenses back to the Debtors' estates. Cadle's argument lacks merit. The Debtors' arrangement with Lexon includes a General Agreement of Indemnity pursuant to which the Debtors agreed to indemnify Lexon for any and all amounts paid by Lexon under the bonds. While the scope of the agreement is not at issue here, it is possible the Debtors may have liability for the litigation costs under that agreement. Regardless, the Court can

14

consider the propriety of Lexon's reimbursement claim when it actually seeks such reimbursement.

Accordingly, the Court finds that the Trustee's fee arrangement with proposed counsel satisfies the requirements of § 328 of the Code.

## CONCLUSION

The Court will approve the Trustee's employment of proposed counsel, finding that proposed counsel do not hold an interest adverse to the Debtors or their estates and that they are disinterested. The Court also finds that proposed counsel's representation of a creditor in this case, Lexon, does not present an actual conflict of interest with respect to the matters for which proposed counsel are being hired. For these reasons the Court will overrule Sojitz's and Cadle's objections to the Trustee's motion in each case and grant the Trustee's motion.